Our final case of the morning is Fehlman v. Mankowski, actually now it's our final case of the afternoon. Mr. Kine. Good afternoon. May it please the court. James Mankowski was the chief of police at the Neelsville Police Department. Patrick Fehlman was an officer at the Neelsville Police Department. Patrick Fehlman spoke out about issues of public concern that were occurring at the Neelsville Police Department under James Mankowski's direction. Mankowski retaliated against Patrick Fehlman during and after Mr. Fehlman's employment there. Mr. Fehlman filed a complaint alleging that he was the victim of retaliation for exercising his First Amendment rights, and the district court dismissed his First Amendment complaint based chiefly on the rule set forth in the Garcetti decision from the United States Supreme Court. The Garcetti rule does not apply to the post-resignation retaliation issue in this case. The rule from Garcetti says that the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities. At the time of the post-resignation retaliation, Fehlman was not an employee. I don't understand why that would be significant. If the speech in question is outside the protection of the First Amendment, the employer can do as it pleases. And the point of Garcetti is that certain on-the-job speech is not covered by the First Amendment at all. So we really need to decide whether the speech is within the scope of Garcetti or not. Now, that seems to me to depend on how one understands the commission. Is the commission part of the employment hierarchy, or is it something distinct? The commission is not part of the employment hierarchy. There is no indication in any job description or in any set of criteria from the department that Mr. Fehlman had an obligation to complain to the police. No. I wish you would listen to my question. Is the commission part of the department's employment hierarchy? I'm not asking what any particular duties were. The district judge said that the commission is the personnel department of the police in this particular community. Is that right, or is it wrong? And if it's wrong, why? By statute, the police and fire commission only have the right to act on, or only, the statute only gives the police and fire commission authority to consider petitions from the chief of police. That's right in the statute. Any other complaint, but in the language of the statute itself, must come from an aggrieved person, in other words, citizens. So in that respect… I don't understand how this is helpful. Think about the federal bureaucracy. Each department of the government has its own personnel sub-department, and then there is the Merit System Protection Board, to which one can complain if you don't think that the Department of Labor has made a correct decision. And most people would understand that the Merit System Protection Board is part of the employment hierarchy of the federal government. It's not some distinct agency, like a court for the purpose of laying against Franks, for example. I'm trying to figure out what role the police and fire commission has in this municipality. Is it like the Merit System Protection Board, in other words? It is not like the Merit System Protection Board because individual citizens cannot make complaints to that board. That board is designed to deal with employees who may have concerns arising in the workplace. It is directly in the chain of command. That's where they're expected to go with concerns. But the police and fire commission, on the other hand, is a body that is open to citizens. Patrick Fellman's wife had as much right to complain to the police and fire commission about the issues that Patrick Fellman raised as Patrick Fellman did. Likewise, the owner of the bar, where he made the remark about the woman, had just as much of a right to complain to the police and fire commission. I would like some clarity on something you said just now, that all the commission could do is deal with the chief. I'm paraphrasing. I'm actually horribly paraphrasing what you said, but that seems slightly at odds with what the statute says and slightly at odds with what the Wisconsin Supreme Court has interpreted the statute to mean as creating a comprehensive system requiring cities to maintain commissions with jurisdiction, quote, with jurisdiction over the hiring, promotion, and discipline of members of the police and fire departments, end quote. Your Honor, if I indicated that something consistent with your paraphrase, I apologize. The statute gives explicit authority to the chief to use the system just as you explained it. It does not give explicit authority to subordinates to use the system to complain about the chief. Instead, subordinates would be included with any citizen, aggrieved persons. In that way, this is not part of the hierarchy. In that way, when Mr. Fellman came to the police and fire commission So what do you want us to do with the Supreme Court of Wisconsin's description? The Supreme Court of Wisconsin's description was focused on the authority that chiefs have to use the commission to maintain discipline in the workplace. Mr. Fellman did go to Chief Mankowski with his concerns, and in that respect, he did what's expected of police officers. He brought forward his concerns of discipline. However, he did not have an obligation to go to the police and fire commission. It isn't in his personnel description, in his job description, and it isn't something that's expected of him. I should say, there's no more expectation of him to go to the police and fire commission than there would be to any other citizen to bring their concerns there. Counsel, the records seem to indicate that when Mr. Fellman was making these statements to the commission that it was not in a public session but in a closed session, right? Why was it in a closed session? It was in a closed session presumably because the police and fire commission deemed it to be something where concerns were being expressed about an employee, and the statute sets forth rules under the open meetings law in Wisconsin where you can go into closed session. Mr. Fellman had absolutely no control over whether that meeting was going to be in closed session or not. That was a decision that the police and fire commission made that they would have made had a citizen come forward with exactly the same concerns. Now, were the two officers who went with Mr. Fellman to this meeting, were they there as citizens too or as police officers? You identified them as fellow officers. Sure. The complaint doesn't distinguish that, and the court is limited to the information in the complaint because this is a motion to dismiss. However, they all came forward as citizens. Mr. Fellman, though, the record indicates, did virtually all of the talking at the session. With the court's leave, I'm going to reserve my remainder of time for rebuttal. Certainly, counsel. Mr. Roman. Thank you, Your Honors. Good morning. My name is Michael Roman. I'm representing Neilsville Chief of Police James Minkowski. The case before the court, I think, based on your question, is quite simple. The focus on this case is whether or not, in the first instance, the alleged speech by Officer Fellman was as a public employee or was it as a private citizen. Both this court repeatedly in the years after Garcetti, as well as Garcetti and the Supreme Court cases have indicated when addressing issues of retaliation for speech alleged to be made by a public employee, the threshold, the first question that the court must answer is that question of is it protected. Judge Easterbrook is correct. That is the focus on the case. This case, even though it's on a motion to dismiss, is not on the conduct or the primary conduct alleged to have taken place by Chief Minkowski. Now, why is that important? I think it's important because this is a constitutional claim. As this court has indicated in Ulrey and some of the other decisions, First Amendment retaliations aren't, claims are not meant to be general carve-outs or whistleblower claims from, you know, that any complaint that could somehow be actionable under maybe some other statutory theory. We're talking about a constitutional claim here, and in this case, the First Amendment. As Judge Easterbrook said, the problem is if the speech is not protected in the first instance, which we allege is not the case here in which the district court found, then it essentially doesn't matter the other elements of a First Amendment retaliation claim. I think it's also important to note in this case is what we're really focused on, and I think your questions to my colleague were principally focused on the issue of the speech to the Police and Fire Commission for Neilsville. The reason why I think that's important is in the district court, a large part of the briefing was focused on speech earlier that Officer Failman alleged to have made directly to Chief Minkowski. He's abandoned that claim on appeal. So we're down to the crux of this case is when Officer Failman and the other officers requested to speak to the Neilsville Police and Fire Commission on June 25th, were they doing so as private citizens or were they doing so as public employees, part of their job duties? Now the court asked multiple questions about the statutory construction in the Wisconsin Supreme Court's interpretation of that. What we're really talking about is Wisconsin Statute 62.13. That is, as the court noted, intended to be a comprehensive statewide system of regulating police departments. The provisions of the statute itself said that's the legislative intent. We're intending by creating this for any city over 4,000 people to create basically a Police and Fire Commission, which under these contexts is exactly as the district court concluded. It's generally, it's in the chain of command. It is the ultimate personnel board for determining issues of discipline and termination or even hiring of police or chiefs of police. Is there no external oversight aspect to its duties? In the sense of what you mean, like an outside sort of an agency completely outside the chain of command? It is in fact made up of, what, five members, three of whom are supposed to be lay citizens? Right. The statute creates the board essentially by appointments. That's why the Common Council doesn't have any role. We're not talking, for instance, I think Judge Lee's question about whether this was an open session or a private session to a Common Council. This was a specific Fire and Police Commission, which is taxed by the and set forth by the statute to be the sole board to provide any discipline of the chief. Now, so to answer your question, I don't believe it's outside, if I understand the question, like just a general oversight board or something like that. It is meant to be part of the personnel because they ultimately conclude whether or not, you know, there should be any discipline set forth against an officer or, in this case, and I think it's importantly in this case, the chief of police. Garcetti basically posits two things. What we have to look at is the context of the speech, and we also have to look at the speech itself. We're on a motion to dismiss. The complaint lays out in the paragraphs in detail of what Officer Feldman is alleged to have said, so we know that for purposes of this motion before the court. We also know the context of this court, and I think that's probably more important here. We're not at an issue talking about the secondary issue of whether this was an issue of public concern. For purposes of the motion to dismiss, we acknowledge that at least at the motion to dismiss stage, that is over. So we're just looking at whether that was part of the official duties. Now, I disagree with my colleague's statement that this only applies that necessarily a person, a grieved party necessarily means a person approaching the Police and Fire Commission is speaking as a citizen. The provisions of the statute, which are the disciplinary actions, if you look at subsection 5 of 62.13, it's labeled disciplinary actions against subordinates, and it talks about it, has a whole set of procedures there, and that's what was referenced, I believe. Charges may be filed against a sort coordinate by the chief, by a member of the board, by the board as a body board, a grieved person. What he left out is 5J also indicates the provisions of A to J shall apply to any disciplinary actions against chiefs where applicable. Therefore, it's not just dealing with subordinates. This also, these same principles and these same procedures would apply to discipline by the board of a chief. And that's what we're talking about. The speech here at issue was alleged conduct by the chief, whether they phrase it as misconduct or whatever, and also his manager of the department. That's all within the scope of the Neilsville Police and Fire Commission's statutory duties. And so we believe that as a matter of law, the court could conclude under these circumstances, based on the allegations that were made in the complaint, that under these circumstances, when Officer Feldman spoke on June 25th in the closed session, that that was as part of his official duty. Now, Judge Peterson Blow also made duty of, they make an argument that, well, he didn't have a specific requirement to do this. I think the district court was correct in saying that police officers do have a duty. And understanding, I think the Seventh Circuit has precedent indicating that, that officers do have a duty as part of their job duties. As long as they're approaching within the chain of command or within the operational structure of the department. Why would a decision of the Seventh Circuit matter? What the duties of a particular job in a local police department are under Wisconsin law is, I should think, a question of Wisconsin law. Your point is well taken. I think the court looks at the overall circumstances. We relied on cases from the Seventh Circuit as analogous to this because, as far as we're aware, no one has applied this particular statute in the context of a Garcetti type defense. And they were arguing, essentially, that this statute didn't have the effect that Judge Peterson asserted that it did. So it's more of a secondary argument. We would argue that, overall, this is akin to a lot of the other cases that we've cited in our brief in which there was a direct, you know, chain of command discussion within the operational framework. And that's why, as a police officer in particular here, that that was in the scope of Officer Fehman's official duties. Now, I'll just, as an aside, jump to the other issue that seemed to be a primary focus on their appeal. And that was the issue of whether post-employment conduct should be treated differently under Garcetti. One, we think, and I won't go into a lot of detail, we think that case was never developed or that argument was never developed in the district court sufficiently to this court could just, even if it wanted to address the merits, it wouldn't have to. But I think, as Judge Easterbrook at least indicated, Garcetti, at least from its structure and the Supreme Court cases since then, and particularly a lot of the Seventh Circuit decisions, have clearly stated that it is a threshold test that we're talking about. We don't get to the other elements of a retaliation claim, including determining the particulars of the retaliatory conduct, if they can't prove and can't establish as a matter of law, or at least raise an inference that they were speaking as a private citizen. We believe in this case, as Judge Peterson indicated, that there is nothing else that they could add. They basically pleaded themselves out of their claim by what was put in the complaint, or the First Amendment complaint here. And with that, we would ask the court to uphold and affirm the decision of the district court in this case. Thank you. Thank you. Anything further, counsel? Yes, Your Honor. Thank you. The Garcetti decision does not apply to the facts in this case, because the Garcetti court did not consider post-employment retaliation at all. The rationale for the Garcetti rule is set forth by the court. It indicates that a government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech. So, does it follow in your view that as soon as Sobolos quits, he's entitled to sue Garcetti for damages, even after losing in the Supreme Court? Only if the plaintiff had continued to retaliate against him, or retaliated against him. What you mean by retaliation is what in First Amendment law is just called imposing a cost on speech. Suppose Garcetti says, this man is a pariah. I will never rehire him, no matter how much he gets down on his knees and pleads. Right? Yes. So, does he now have a claim for damages against District Attorney Garcetti? Yes. Even though the Supreme Court has held that he did not engage in protected speech? If the plaintiff in the Garcetti case... And does any case support that view? Your Honor, no case has ruled on Garcetti, one direction or the other, on how it applies to post-employment retaliation for speech made while an employee was employed. In either direction. Okay. Thank you very much. Thank you. The case is taken under advisement and the court will be in recess.